[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1825 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1826 
OPINION
Stacy Z. appeals an order after a selection and implementation hearing under Welfare and Institutions Code[1] section 366.26 terminating her parental rights to minor child Daniel D. and referring him for adoption. Stacy contends delay resulting from dilatory tactics by the San Diego County Department of Social Services (the Department) violated her right to custody and Daniel's extended family's right to association. Stacy also contends the court abused its discretion in referring the matter for hearing under section 366.26 since it assertedly improperly failed to return Daniel to his maternal grandmother or consider preferential placement of Daniel with other extended family members in a timely manner. Stacy *Page 1827 
further contends the court erred in not according the maternal grandmother standing as a de facto parent and denied due process by not appointing counsel to represent the maternal grandmother once her custodial rights were challenged. Stacy seeks reversal of the order and placement of Daniel with his maternal grandmother. We affirm the order.
 I FACTUAL AND PROCEDURAL BACKGROUND
On April 6, 1990, Daniel was born to Stacy.
Stacy was young and immature. Stacy neglected Daniel's basic needs for clean living conditions and care. The apartment where Stacy lived with Daniel and his siblings was insect infested, with dirty diapers, raw garbage and other trash piled a foot high. Daniel and his siblings suffered ringworm and the unhealthy consequences of open sores, crusting and old scabs from head lice.
Beginning in 1988 child protective authorities made allegations involving Stacy including general neglect, lack of supervision, drug use and molestation by Stacy's then husband of one of Daniel's siblings. Daniel's father's whereabouts were unknown.
In November 1990 the Sacramento County Juvenile Court declared Daniel its dependent child. The court placed Daniel with Stacy under the intensive supervision of Sacramento's social services department with the provision of extensive services.
A few months later Stacy relocated to San Diego with Daniel and his siblings.
In June 1991 the San Diego County Juvenile Court assumed jurisdiction over the minors. During the next few months the conditions of the home and the minors deteriorated. Stacy was again drinking alcohol and arguing with her then current husband. During an argument on September 17, 1991, Stacy stabbed her husband's shoulder with a knife.
On September 20, 1991, the Department filed a petition under section 387 to remove Daniel from Stacy's physical custody on the ground she was "no longer willing or able to continue providing care and supervision for said minor." The court ordered Daniel detained in shelter care, foster care, or at the social worker's discretion with his grandmother. *Page 1828 
In November 1991 the court made a true finding on the Department's supplemental petition arising from the stabbing incident and removed the minors from Stacy's custody. The court found there were no reasonable means by which Daniel's physical health could be protected without removing him from Stacy's physical custody. Daniel's level of care was identified as placement with a relative.
In December 1991 the court placed Daniel in his maternal grandparents' home in El Dorado County. Stacy remained in San Diego, made uneven but gradual improvement, and continued her efforts to regain custody of the minors.
In January 1992 at a review hearing the court found by clear and convincing evidence that returning Daniel to Stacy's custody would create a substantial risk of detriment to his physical and emotional well-being. The court continued Daniel as its dependent in out-of-home relative placement. The court also found reasonable services had been provided and offered to Stacy.
Eventually, the maternal grandmother became overwhelmed by the requirements of caring for her grandchildren. On June 22, 1992, the maternal grandparents returned the minors to San Diego. However, Stacy lacked suitable housing for the children.
On June 26, 1992, the Department filed a supplemental petition under section 387 alleging the maternal grandmother was "no longer willing to provide care and supervision" for Daniel. The petition sought to move Daniel from his relative placement to a foster home.
On June 29, 1992, after hearing, the court ordered Daniel detained at Hillcrest Receiving Home or in licensed foster care.
On July 22, 1992, the court made a true finding on the Department's supplemental petition arising from the maternal grandmother's unwillingness to provide further care and supervision for Daniel. Daniel was placed in foster care.
On October 16, 1992, after hearing under section 366.22 on the issues of disposition, review and permanent planning, the court found by clear and convincing evidence that returning Daniel to Stacy would create a substantial risk of detriment to Daniel's physical/emotional well-being and reasonable services had been provided to Stacy to help her overcome the problems *Page 1829 
which led to the initial removal of Daniel.[2] The court ordered termination of reunification services, continuation of Daniel as its dependent in foster care, and setting of a hearing under section 366.26.[3]
In December 1992 Stacy moved into her mother's home in Sacramento.
 II SECTION 366.26 AND 388 PROCEEDINGS (1a) In February 1993 Stacy requested a contested section 366.26 hearing. Noting Daniel's maternal grandmother had filed a request for de facto parent status, the court stated hearing on such application would precede the contested section 366.26 hearing.
In March 1993 the court heard the grandmother's application for de facto parent status. The court denied the application, noting "the grandmother is essentially the grandmother in this case." The court stated the grandmother was entitled to attend the section 366.26 hearing and address the court.
On April 22, 1993, Stacy filed a petition under section 388 seeking placement of Daniel in her home or alternatively in his maternal grandmother's home.
On April 28, 1993, the court heard and denied Stacy's section 388 petition. The court stated Stacy did not show placing Daniel with her would be in his best interests. The court also stated Stacy's alternative request to place Daniel with the grandmother effectively constituted a premature request related to adoptive placement preferences.
On various dates from April 28 through June 24, 1993, the court held a hearing under section 366.26. The Department indicated Daniel was adoptable and recommended terminating parental rights. The court heard testimony by Stacy, Daniel's counsel's investigator, previous social worker McGowan, Daniel's maternal grandmother, the foster mother, and current adoption social worker Hartley. The court reviewed the Department's assessment dated February 11, 1993. The court also reviewed a videotape of Stacy's and the maternal grandmother's two visits with Daniel in late March *Page 1830 
1993. The court permitted the grandmother to make a statement about Daniel's best interests.
After hearing, the court found inapplicable section 366.26, subdivision (c)(1)(A)'s exception to termination of parental rights because the evidence showed Stacy did not maintain regular visitation/contact with Daniel and Daniel would not benefit from continuing the relationship.[4] The court noted it would be difficult to distinguish the quality of Daniel's relationship with Stacy from a relationship he might have with a stranger. The court deferred until a later hearing the issue whether Daniel was likely to be adopted and directed the Department to provide a supplemental assessment.
On September 29, 1993, the matter came for further hearing. The court permitted the maternal grandmother to make a statement. After hearing, the court found by clear and convincing evidence it was likely Daniel would be adopted. The court ordered termination of Stacy's parental rights and referred Daniel for adoption.
On October 8, 1993, Stacy filed this appeal.[5]
 III DISCUSSION A Asserted Improper Delay by Department
Stacy contends delay assertedly caused by the Department's "dilatory tactics, intransigence or neglect" violated her right to custody of Daniel and his extended family's right to association. Specifically, Stacy notes on September 16, 1992, Daniel's maternal grandmother sent a letter to the juvenile court stating that before considering adoption for Daniel the referee should "keep in mind that we are from a large family, and I am certain that you would find one of us suitable to raise him if you are truly determined not *Page 1831 
to allow these children's mother to raise them herself";[6] on December 15, 1992, the maternal grandmother informed the social worker that Stacy had moved back into the grandmother's home and both women adamantly wanted Daniel returned to the grandmother's home; and on February 11, 1993, the Department's assessment stated Daniel appeared "to be very comfortable in his current placement" and was a "happy, energetic little boy who is very busy exploring his environment." Thus, according to Stacy, by February 1993 time was on the Department's side so that in only a few more months the Department or Daniel's counsel could assert Daniel had been removed from his family for so long that any custody change would be emotionally devastating. Stacy contends instead of committing hundreds of dollars for psychological evaluations the Department should have furnished her with financial assistance to obtain housing or provided her and Daniel's maternal grandmother with airplane tickets on alternate weekends to enable them to visit Daniel. Stacy asserts the goal of family reunification could likely have been achieved only by timely placement of Daniel with his maternal grandmother. Stacy further asserts if she had been given the opportunity to assume a parenting role in the maternal grandmother's home the potential of bonding with the foster parents would never have become a factor. Asserting placement with the maternal grandmother would have been a less intrusive alternative than terminating parental rights, Stacy faults the Department for not permitting the grandmother sufficient involvement in the reunification process.
However, the issue of the propriety of the court's decisions from October 1992 through March 1993 not to place Daniel with his maternal grandmother is not cognizable on this appeal by Stacy. Although the grandmother's September 16, 1992, letter to the referee was before the court on October 16, 1992,[7] Stacy did not seek placement with the grandmother but instead only sought return of Daniel to herself. Stacy thus waived the right to raise such issue on appeal. (In re Jennilee T. (1992) 3 Cal.App.4th 212, 222-223 [4 Cal.Rptr.2d 101]; In re Heidi T. (1978)87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263].) Further, Stacy did not appeal from the October 16, 1992, order leaving Daniel in foster care. Similarly, after the grandmother's December 15, 1992, request to the social worker, the court at hearings on February 11, 1993, and March 23, 1993, continued Daniel in foster care but Stacy did not appeal those orders. (2) (See fn. 8.), (1b)
Thus, the orders from October 1992 through March 1993 continuing Daniel in foster care rather than placing him with the maternal grandmother "have long since become final and cannot be belatedly reviewed now." (In re Elizabeth G. (1988) *Page 1832 205 Cal.App.3d 1327, 1331 [253 Cal.Rptr. 161]; accord, In reElizabeth M. (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483] .)[8]
Similarly not cognizable on this appeal is the issue of the propriety of the court's April 1993 order denying Stacy's section 388 petition for custody modification based on the ground she assertedly had adequate housing for Daniel. Stacy did not appeal the order denying her petition under section 388. Since that order is long since final, it cannot now be belatedly reviewed. (In re Elizabeth G., supra, 205 Cal.App.3d at p. 1331; accord,In re Elizabeth M., supra, 232 Cal.App.3d at p. 563.)
The California Supreme Court's decision in In re Matthew C.
(1993) 6 Cal.4th 386 [24 Cal.Rptr.2d 765, 862 P.2d 765] does not compel a contrary result on the matter of the cognizability on this appeal of the earlier orders continuing Daniel in foster care rather than placing him with his maternal grandmother. Recognizing that findings subsumed within an order terminating reunification services and setting a section 366.26 hearing substantially affect a later order terminating parental rights, the Supreme Court in Matthew C. held such findings were reviewable on appeal from the final order terminating parental rights after the section 366.26 hearing. (6 Cal.4th at pp. 388, 396, 401.)[9] (3) Thus, on appeal from the section 366.26 hearing, a parent may properly raise issues directly related to the earlier decision that reunification services should be terminated and a section 366.26 hearing be *Page 1833 
scheduled. However, Matthew C. does not permit review of all earlier juvenile court decisions on an appeal from the section 366.26 hearing. Instead, as the Supreme Court expressly noted: "If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata. [Citation.]" (6 Cal.4th at p. 393.) (1c) As discussed, the orders from October 1992 through April 1993 continuing Daniel in foster care were independently appealable. Since Stacy did not timely appeal such orders, the issues determined in those rulings are res judicata. (Ibid.; In re Elizabeth M., supra,
232 Cal.App.3d at p. 563; In re Elizabeth G., supra, 205 Cal.App.3d at p. 1331.) As also discussed, at the October 1992 hearing Stacy did not seek placement of Daniel with the maternal grandmother and thus has waived the right to raise such issue on appeal. (Inre Jennilee T., supra, 3 Cal.App.4th at pp. 222-223; In reHeidi T., supra, 87 Cal.App.3d at p. 876.)[10]
 B Nonplacement With Family Members (4) Undaunted, Stacy attacks the court's setting the matter for hearing under section 366.26 as an abuse of discretion as based upon its assertedly improper earlier failures to return Daniel to his maternal grandmother or consider preferential placement with other extended family members in a timely manner. Stacy contends the record did not contain sufficient evidence to deny the maternal grandmother preferential placement. Specifically, Stacy points to evidence indicating the maternal grandparents' home was a positive environment. Stacy also asserts the record contained no evidence the relatives in the maternal grandparents' extended family were "anything but eminently suitable custodians" and the Department did not show placing Daniel with those relatives would not be in his best interests. Stacy faults the Department for not diligently investigating those relatives.
In support of her contentions involving the matter of relative placement, Stacy cites section 319, section 361.3, and In reJessica Z. (1990) 225 Cal.App.3d 1089, 1101 [275 Cal.Rptr. 323] .[11] However, by its terms section *Page 1834 
319 applies to the initial petition hearing and is thus not relevant here.[12] Further, the time to appeal issues involving that stage of the proceedings has long since passed. (In reMatthew C., supra, 6 Cal.4th at pp. 392-393; In re ElizabethM., supra, 232 Cal.App.3d at p. 563; In re Elizabeth G.,supra, 205 Cal.App.3d at p. 1331.) Similarly unavailing is Stacy's reliance on section 361.3.[13] Section 361.3 governs "placement decisions at the time of removal from parental custody." (In re Baby Girl D. (1989) 208 Cal.App.3d 1489, 1493 [257 Cal.Rptr. 1].) The time to appeal issues involving that dispositional stage of the proceedings has also passed. (In reMatthew C., supra, at pp. 392-393; In re Elizabeth M., supra,
at p. 563; In re Elizabeth G., supra, at p. 1331.) (1d) Stacy also specifically contends the court ignored the maternal grandmother's September 16, 1992, request and the Department ignored the grandmother's December 15, 1992, request for return of Daniel to her home.[14] However, as noted, the issue of the propriety of the orders from October 1992 through April 1993 continuing Daniel in foster care rather than placing him with the grandmother is not cognizable on this appeal since Stacy did not timely appeal those independently appealable orders. (In reMatthew C., supra, at pp. 392-393; In re Elizabeth M., supra,
at p. 563; In re Elizabeth G., supra, at p. 1331; also In reJennilee T., supra, 3 Cal.App.4th at pp. 222-223; In re HeidiT., supra, 87 Cal.App.3d at p. 876.)
(5) Further, even if we were to reach on this appeal from the section 366.26 hearing the merits of the propriety of the court's earlier orders continuing Daniel in foster care rather than placing him with his maternal grandmother, we would conclude the court did not abuse its discretion. Although relative placement is to be accorded preferential consideration in the initial stages of dependency proceedings, an ongoing caretaker may receive preferential consideration at later times. (Cf. In reBaby Girl D., supra, 208 Cal.App.3d at pp. 1493-1494.) In September 1991 Daniel was *Page 1835 
removed from Stacy and placed in shelter care. Later Daniel was placed with the grandmother in San Diego. Subsequently, the grandmother was allowed to move with Daniel to El Dorado. However, the grandmother became overwhelmed and in June 1992 returned Daniel to San Diego "no matter what" because she was tired of caring for him and had spent a lot of money. Upon his return to San Diego, Daniel was placed in foster care. The grandmother's September 1992 letter did not seek return of Daniel to her home at that time. In December 1992 when the grandmother finally requested such return, placing Daniel with her would have subjected him to potential further uncertainty and instability since she had already in the past been unable to keep him. Thus, on this record the court could reasonably conclude once Daniel was stabilized in foster care it was in his best interests to continue such placement instead of subjecting him to the possibility his grandmother would again become overwhelmed or unwilling to provide for his care.[15]
 C Grandmother's Request for De Facto Parent Status (6) As noted, the court denied Daniel's maternal grandmother's request to be accorded de facto parent status. Stacy contends the court erred as a matter of law in not granting the grandmother status as a de facto parent. Stacy also contends the court violated due process in not appointing counsel to represent the grandmother once her custodial rights were challenged. However, Stacy lacks standing to raise those issues because her interests are not prejudiced by the denial of de facto status to the grandmother. (In re Vanessa Z. (1994)23 Cal.App.4th 258, 260-261 [28 Cal.Rptr.2d 313].)
Stacy's interest in the dependency proceedings was to reunify with her dependent child Daniel. However, a "de facto parent's nexus with the proceeding is that person's separate interest and relationship with the child, *Page 1836 
which may have developed over time through the daily care, affection and concern for the child. [Citation.]" (In re VanessaZ., supra, 23 Cal.App.4th 258, 261.) The de facto parent's interest is not "in acting as an advocate to preserve the natural parent's bond with the child." (Ibid.) The fact Stacy's mother (Daniel's maternal grandmother) was not accorded de facto parent status did not preclude Stacy from presenting any evidence about Daniel's best interests or Stacy's relationship with Daniel. (Ibid.) Thus, because she is not aggrieved by denial of the maternal grandmother's request for de facto parent status, Stacy may not challenge such ruling on appeal. Similarly, Stacy lacks standing to raise the issue whether the court erred in not appointing counsel for the grandmother.[16]
 DISPOSITION
The order terminating Stacy's parental rights and referring Daniel for adoption is affirmed.
Todd, J., and Nares, J., concurred.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] The court also found Daniel's father — then requesting custody — was a noncustodial parent at the time conditions arose bringing Daniel within the provisions of section 300 but placement with the father would be detrimental to Daniel. The father has not appealed in this matter.
[3] The court also granted Stacy supervised visitation and increased Daniel's level of care to licensed foster home.
[4] Section 366.26, subdivision (c)(1)(A), permits the court to find termination of parental rights would be detrimental to the minor where the "parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship."
[5] In the background information attached to her notice of appeal, Stacy asserted there had not been any related appeals, writs or other proceedings before any California appellate court.
[6] Stacy inaccurately characterizes the maternal grandmother's September 16, 1992, letter to the juvenile court referee as specifically requesting return of Daniel to her home.
[7] The social worker attached such letter to an additional information report.
[8] "An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed. [Citation.]" (Inre Elizabeth M., supra, 232 Cal.App.3d at p. 563.)
[9] In In re Matthew C., supra, 6 Cal.4th 386, the Supreme Court stated: "Clearly, an order terminating reunification services and setting a selection and implementation hearing, while interim and not itself appealable, involves the merits of or necessarily affects the subsequent order terminating parental rights, and substantially affects the rights of the parties. It is at this juncture, and not at the subsequent section 366.26 hearing, that the critical decision regarding parental rights is made. [Citation.]" (Id. at p. 396.) The court concluded although subdivision (k) of section 366.26 "abrogates `interim appeals' from orders terminating reunification services and setting a section 366.26 hearing, findings subsumed within such orders remain reviewable on appeal from the final order made at the section 366.26 hearing." (6 Cal.4th at p. 401.)
In In re Matthew C., supra, 6 Cal.4th 386, the Supreme Court also noted "`"the decision to terminate parental rights [at the section 366.26 hearing] will be relatively automatic if the minor is going to be adopted."' [Citation.] [¶] `Thus, in order to terminate parental rights [at the section 366.26 hearing], the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated.' [Citation.] Hence, the proceeding terminating reunification services and setting a section 366.26 hearing is generally a party's last opportunity to litigate the issue of parental fitness as it relates to any subsequent termination of parental rights, or to seek the child's return to parental custody. [Citation.]" (Id. at p. 392.)
[10] We also note the decisions from February 1993 through April 1993 continuing Daniel in foster care rather than placing him with his maternal grandmother were clearly not subsumed within the earlier order in October 1992 terminating reunification services and setting the section 366.26 hearing.
[11] In In re Jessica Z., supra, 225 Cal.App.3d 1089, the appellate court noted section 361.3 does not "impose on counsel for an indigent parent of a dependent child any obligation to pursue the possibility of relative placement: that responsibility falls to the probation officer and to the court." (225 Cal.App.3d at p. 1101.)
[12] Section 319 provides at the initial petition hearing the probation officer is to report "whether there are any relatives who are able and willing to take temporary custody of the minor." The statute also provides: "If the minor cannot be returned to the custody of his or her parent or guardian, the court shall determine if there is a relative who is able and willing to care for the child." The statute further provides if the minor is not released from custody the court may place the child in a suitable home of a relative.
[13] At relevant times section 361.3, subdivision (a), provided in part: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." The statute also provided: "The county social worker shall ask the parents if there are any relatives that should be considered for placement. This inquiry shall not be construed, however, to guarantee that the minor will be placed with any person so identified."
[14] As noted, Stacy inaccurately characterizes the grandmother's September 16, 1992, letter to the referee as specifically requesting return of Daniel to her home.
[15] We also note even if the order terminating Stacy's parental rights were reversed, it is unlikely a new hearing would result in a different outcome more favorable to Stacy. "Any reversal of an order freeing a child for adoption . . . cannot possibly return the selection and implementation hearing to the same arena in which it was first held. This is because the focus of the hearing always must be upon the best interests of the child. The new hearing would entail not only the facts and evidence brought forth at the original hearing, but of necessity would require evidence as to the current status of the child." (In re Arturo A. (1992) 8 Cal.App.4th 229, 244 [10 Cal.Rptr.2d 131], fn. omitted.) Further, "in order to determine prejudice (i.e., that the case would now yield a different result from that of the first hearing) the Court of Appeal must have evidence of the child's current status. . . . Reflecting upon this situation generally, we must conclude that it will be the rare case in which a child found adoptable will not, pending the appeal, have changed his circumstances very much to the detriment of any possible reunification with the parent." (Id. at p. 245, italics in original.) In sum, because she has not demonstrated any likelihood Daniel would be placed with the maternal grandmother upon reversal, Stacy has not established prejudice.
[16] We note ". . . indigent de facto parents are not entitled as a matter of law to court-appointed counsel." (In re Joel H.
(1993) 19 Cal.App.4th 1185, 1199 [23 Cal.Rptr.2d 878].) *Page 1837