[No. B091654. Second Dist., Div. Five. Oct. 24, 1995.]

In re ANTHONY P., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Petitioner and Respondent, v.
RHONDA P., Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portion of part III.

**COUNSEL**

Jane Winer, under appointment by the Court of Appeal, for Objector and Appellant.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, Jones, Day, Reavis & Pogue, Elwood Lui and Laura A. Matz for Petitioner and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Appellant, Rhonda P., appeals from a juvenile court order terminating her parental rights to the minor, Anthony P., pursuant to Welfare and Institutions

Code, section 366.26.[1] Appellant contends the order must be reversed because the juvenile court failed to consider adequately the minor's wishes about placement and adoption as well as neglected to provide for his ongoing and frequent visitation with his younger brother Cody P. In the published portion of this opinion, we address the issue of whether appellant has waived her rights pursuant to section 16002 concerning sibling visitation because of a failure to properly raise the question in the trial court. We affirm.

## II. BACKGROUND

The minor was born on September 2, 1989, to appellant and Allen H., who is not a party to this appeal. On May 16, 1990, the department of children's services (department) filed a section 300 petition on behalf of the minor, who was approximately eight months old. It alleged on or about May 15, 1990, appellant went to a bar to consume alcohol, leaving the minor at her home without adequate supervision surrounded by empty beer bottles. Further, it was alleged she had a history of alcohol use which rendered her unable to properly provide care for the minor. The court sustained the petition on September 13, 1990, declared the minor to be a dependent ward of the court, and placed him in foster care. On October 24, 1990, the court ordered reunification services for appellant consisting of: monitored visits; a bus pass; parenting, drug and alcohol counseling; drug testing; and individual counseling.

On April 24, 1991, and October 23, 1991, six-month and twelve-month reviews were held and the juvenile court continued the reunification services plan. On November 14, 1991, at the 18-month judicial review hearing, the juvenile court found: appellant did not comply with the case plan; there was no substantial probability that the minor would be returned to her custody in 6 months; and the minor was not adoptable. The court: terminated reunification services; ordered a permanent plan of long-term foster care; ordered appellant to participate in department approved counseling; and granted appellant weekend and overnight visitation. On approximately February 1, 1992, appellant had another child, Cody P., and moved in with her mother in a senior citizen housing project. Appellant continued to have overnight visitation with Anthony P. Sometime later, appellant moved out of her mother's home. On May 14, 1992, November 12, 1992, December 14, 1992, and June 14, 1993, the juvenile court reviewed and continued in full force and effect the permanent plan and permanent placement order.

On December 13, 1993, the court scheduled a section 366.26 hearing, which was continued several times, to determine a new permanent plan. May

---

[1] Unless otherwise indicated, all future statutory references are to the Welfare and Institutions Code.

18, 1994, was appellant's last visit with the minor. At that visit, the minor ignored appellant and was resistant to sharing or interacting with her. At a hearing on October 6, 1994, appellant requested unmonitored visitation with the minor. The court ordered "the visitation with [the minor] is still monitored." In August 1994, Cody P., was also detained by the department.

In September 1994, the minor's original foster family thought he was too disruptive in their home, decided not to adopt him, and asked to have him removed. On August 29, 1994, the minor met his new foster parents. By September 12, 1994, he was placed in their home on what was referred to as a "fost-adopt" basis which meant they were planning to adopt him. The minor's new foster family was "open" to taking custody of Cody P. On February 16, 1995, Cody P. was made a dependent ward of the court.

On March 22, 1995, the section 366.26 hearing concerning permanent placement services occurred. Appellant, who was present, and the minor, who was not present, were represented by separate counsel. At that time, the minor was five and one-half years old, had been with new foster family for six months, and had not been visited or contacted by appellant for ten months. Appellant's counsel objected to the minor not being present at the hearing and the fact that his "feelings were not expressed in the report as to his relationship with this mother." Counsel for department stated that the social worker was present to testify with regard to anything that was not explicitly written in the report. After a discussion off the record, the court stated: "All right. Counsel, it's my understanding that mother's attorney is not asking that the minor be brought in but wants an opportunity to cross-examine the worker regarding any interview that the worker's had with the minor; is that correct?" Appellant's counsel responded: "Yes, that is. [¶] . . . [¶] Your honor, I would say for the mother, the mother had wanted the minor to be brought in today so that he could be questioned because she does not want the minor to think that she is deserting him. Because after this hearing, she's afraid she will never have any contact with him." Appellant's counsel then stated: "But what we did ask, if minor's counsel could have had a chance to interview him in lieu of minor being brought into court today, and I do not think that has happened." The trial court then stated: "All right. Counsel, I have to state for the record that this case has been set for a .26 hearing since, as I indicated, 4/11/94. [¶] All counsel were aware that the case was to be here today. These requests apparently were not made before right now and it's five minutes to 2:00. No one indicated to Mr. Roth that [the minor] should be brought in. No one indicated to the worker or to the court that [the minor] should be here today. [¶] Now, Mr. Roth is looking through the code sections to see if there's a requirement. The court has looked. [¶] I don't see that there's a requirement that a minor five years has

to be brought to court for the .26 hearing. And it's my understanding that the worker has interviewed the family and the minor and is here for cross-examination. [¶] I will receive any other information that you have if you can direct the court to the code section that I'm missing regarding having—to have the minor five years here in court. [¶] If you're asking that Ms. Kemper [the minor's counsel] interview the minor, Ms. Kemper indicated that she has not done that. But as I've indicated, Ms. Kemper, based on the information that she has, is willing to go forward notwithstanding that she has not spoken to the minor for this hearing. . . . [¶] All right. Counsel, we've looked to the Civil Code to see we can draw some inference to what's required through Civil Code [section] 232. [¶] I think everyone at this point is in agreement that the minor is not required to be here. His interests, if they can be ascertained given his age, can be presented to the court through the social worker. [¶] I believe that's everybody's agreement. [¶] At this time, I'm not going to allow a continuance of the case given that there's no requirement that we can ascertain that the minor has to be here in light of the fact that the social worker is here and has informed all parties and the court that he has talked with the minor and the family." As noted previously, the continuance motion was made on March 22, 1995.

At the hearing, the social worker testified: before the minor moved into his new foster home, he had behavioral problems including acting out at school, bedwetting, engaging in rivalries with his foster siblings, and throwing temper tantrums in public; since moving into his new foster home, the minor's behavior improved dramatically in each problem area; and the minor felt very comfortable with the new environment. The social worker was of the opinion that the minor indicated in many ways a desire to remain with the new foster family. The social worker stated he did not directly speak with the minor about the concept of adoption. However, the social worker did discuss the concepts of temporary versus "forever" homes. When asked about staying in the new foster home "forever," the minor stated he liked the family. The minor referred to the foster parents as "mommy" and "daddy." The minor knew appellant was one of his "mommies." Further, the minor knew that appellant had been the mother who had given birth to him. Moreover, the minor only asked about appellant once or twice after she stopped visiting him. Further, the social worker stated that the minor was unaware of the existence of his brother, Cody P.

Appellant testified: she had been told by the social worker not to visit the minor; she did not know the minor's whereabouts; she said that one of the social workers was doing everything possible to keep her from gaining custody of the minor; the minor would run and greet her when she visited; Cody P. knew he had a brother; she did not want the minor to be adopted;

she has had two or three nice homes for the minor but no social worker would inspect the residences; Cody P. visited the minor a few times; Cody P. recognizes the minor's picture; the minor was present when Cody P. was born; the minor knows he had a brother; and at the last visit, the minor asked when he was going to be able to go home with her and Cody P. Three reports which were entered into evidence reflected several statements by the minor about his placement and information concerning Cody P. which indicated: an August 17, 1994, progress report stated, in pertinent part, Cody P. visited the minor on February 2, 1994; since the minor was not told his first foster family did not want to adopt him, no other statement was taken from him about permanent placement; a March 22, 1995, progress report recommended the termination of parental rights and the minor be placed for adoption; and the December 14, 1994, section 366.26 report which stated, in pertinent part, "[The minor] told his CSW [interviewer] that he likes this family and likes living with them" and the new foster parents would be interested in gaining custody of Cody P. if parental rights were terminated.

The court terminated appellant's parental rights and found by clear and convincing evidence: the minor did not have a relationship with appellant because she did not exercise regular visitation with or contact him; the minor would not benefit from a continuing relationship with appellant; adoption would be in the minor's best interest; the termination of parental rights is not detrimental to the minor; and the department made reasonable efforts beyond 18 months to secure reunification. The court then specifically asked both counsel if there was "any other that your [*sic*] requesting . . ." and they responded negatively. The court then gave appellant additional time to speak and she stated, in pertinent part: "I know but [Cody P.] wants his brother home too. [¶] . . . [¶] Cody [P.] knows his brother [the minor] He wants him home too. He asked me about [him]. I have the pictures right here. I carry them with me all the time."

## III. DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

▮ Appellant's contention that reversal is required because the court failed to provide for "ongoing and frequent" visitation with Cody P. in the permanent plan pursuant to section 16002, subdivision (b), has been waived. Section 16002, subdivision (b) provides, in pertinent part: "When maintaining sibling togetherness is not possible, diligent effort shall be made, and a case plan prepared, to provide for ongoing and frequent interaction among siblings . . . , if parental rights are terminated, as part of developing the

---

*See footnote, *ante*, page 635.

permanent plan for the child. If the court determines by a preponderance of the evidence that sibling interaction is detrimental to a child or children, the reasons for the determination shall be noted in the court order, and interaction shall be suspended."[2] Appellant has waived her right to assert error as to sibling visitation on appeal by not properly raising the issue below. No objection was interposed in superior court premised upon: the alleged failure to "maintaining sibling togetherness and contact" (§ 16002, subd. (b)); the purported failure to "provide for ongoing and frequent interaction among siblings until family reunification is achieved" (§ 16002, subd. (b)); or the supposed failure to state reasons for the suspension of sibling interaction. (§ 16002, subd. (c).) Hence, any objection to the absence of an order providing for sibling visitation has been waived. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589-590 [30 Cal.Rptr.2d 575] [submitting to local child protective services agency's recommendation of removal of child, without introducing any evidence or offering any argument, waives issue of sufficiency of evidence to support such an order on appeal]; *In re Daniel D.*

---

[2]Section 16002, in full, provides: "(a) It is the intent of the Legislature to maintain the continuity of the family unit, and ensure the preservation and strengthening of the minor's family ties by ensuring that when siblings have been removed from their home, either as a group on one occurrence or individually on separate occurrences, the siblings will be placed in foster care together, unless it has been determined that placement together is not in the best interest of one or more siblings. The Legislature recognizes that in order to ensure the placement of a sibling group in the same foster care placement, placement resources need to be expanded. [¶] (b) The responsible local agency shall make a diligent effort in all out-of-home placements of dependent children, including those with relatives, to maintain sibling togetherness and contact. When maintaining sibling togetherness is not possible, diligent effort shall be made, and a case plan prepared, to provide for ongoing and frequent interaction among siblings until family reunification is achieved, or, if parental rights are terminated, as part of developing the permanent plan for the child. If the court determines by a preponderance of the evidence that sibling interaction is detrimental to a child or children, the reasons for the determination shall be noted in the court order, and interaction shall be suspended. [¶] (c) When there has been a judicial suspension of sibling interaction, the reasons for the suspension shall be reviewed at each periodic review hearing pursuant to Section 366. When the court determines that sibling interaction can be safely resumed, that determination shall be noted in the court order and the case plan shall be revised to provide for sibling interaction. [¶] (d) If the case plan for the minor has provisions for sibling interaction, the minor, or his or her parent or legal guardian shall have the right to comment on those provisions. [¶] (e) By February 11, 1995, the State Department of Social Services shall conduct a study, including the review of existing licensing laws and regulations, to identify barriers that limit the placement resources available for sibling groups and to develop solutions to those barriers. The study shall include exploring the feasibility of providing incentives to foster parents to ensure their availability to accept sibling groups, and providing support services to foster parents and relatives that would enable them to accept sibling groups. The study shall also explore appropriate alternatives to placement of siblings. [¶] (f) For the purpose of placement and visitation "sibling" is defined as sister, brother, half-sister, half-brother, or as appropriate, stepsister or stepbrother. [¶] (g) The court documentation on sibling placements required under this section shall not require the modification of existing court order forms until the Child Welfare Services Case Management System is implemented on a statewide basis."

(1994) 24 Cal.App.4th 1823, 1831 [30 Cal.Rptr.2d 245] [by only seeking placement with herself in superior court, mother waived right on appeal to contend child should be placed with grandmother]; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411 [286 Cal.Rptr. 592] [parent waived right to proof beyond a reasonable test mandated by Indian Child Welfare Act (25 U.S.C. §§ 1901-1963) when no objection interposed to court's use of clear and concerning evidence standard]; *In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263] [failure to object in superior court waived issue of right to separate counsel for minor].) Further, the failure to object to the purported failure to state reasons for the absence of court-ordered sibling visitation waived any such contention in this court. (*People* v. *Scott* (1994) 9 Cal.4th 331, 357-358 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [failure to state reasons for sentencing choice waived by failure to object]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1138 [275 Cal.Rptr. 797, 800 P.2d 1227] [failure to object to sufficiency of statement of decision bars raising that issue in Supreme Court]; *In re Marriage of Schnabel* (1995) 30 Cal.App.4th 747, 750 [36 Cal.Rptr.2d 682] [any error concerning inclusion of medical and life insurance premiums in computation of division of property cannot be raised for first time on appeal]; *Johnson* v. *Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 623, fn. 11 [34 Cal.Rptr.2d 26] [issue as to absence of express finding concerning discovery dispute waived on appeal because no request for such a specific determination made in trial court]; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 671 [33 Cal.Rptr.2d 13] [issue of ambiguity of judge's findings in statement of decision waived since no objection interposed in superior court].) Appellant's vague and nonspecific reference to the minor and Cody P. did not preserve any issue concerning section 16002 on appeal.

## IV. DISPOSITION

The parental rights termination order is affirmed.

Grignon, J., and Armstrong, J., concurred.