[No. B097244. Second Dist., Div. Two. June 5, 1996.]

In re JASMINE J., a Person Coming Under the Juvenile Court Law.
WILLIE S., Defendant and Appellant, v.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent.

## COUNSEL

Mitchell L. Beckloff, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Gary P. Gross and Dawyn Harrison for Plaintiff and Respondent.

## Opinion

**NOTT, J.**—Appellant Willie S. appeals from an order terminating parental rights after a hearing held pursuant to Welfare and Institutions Code section 366.26.[1] We affirm.

### Contentions

Appellant contends that the juvenile court violated his due process rights when it precluded him from contesting the recommendations of the department of children's services (DCS) at the selection and implementation hearing.

### Facts and Procedural Background

On October 5, 1993, the DCS filed a section 300 petition on behalf of Jasmine J., a newborn. The petition stated that Jasmine had a positive toxicology screen for cocaine shortly after her birth. Additionally, Jasmine's mother tested positive for cocaine, was a frequent user of cocaine, and had an extensive history of substance abuse. The petition also alleged that appellant, Jasmine's father, who is 75 years old, was unwilling and/or unable to provide care and supervision for Jasmine. Moreover, Jasmine's parents were alleged to have prior DCS and juvenile court intervention due to the mother's drug use. Jasmine's four siblings[2] are current dependents of the court.

On October 6, 1993, the juvenile court held an arraignment/detention hearing, and ordered Jasmine detained in shelter care. The court also ordered that appellant could have reasonable visits with Jasmine, and gave the DCS discretion to release Jasmine to her paternal great-uncle.

On November 19, 1993, the juvenile court held a pretrial resolution conference, and the court sustained an amended version of the section 300 petition, which included allegations that Jasmine's mother was a substance abuser and that appellant "[a]t this time . . . is unwilling and/or unable to provide care and supervision for the minor." The court declared Jasmine a dependent child of the juvenile court and ordered that she be suitably placed in foster care. The court ordered family reunification services for Jasmine and her parents and ordered Jasmine's mother to participate in parenting classes and a drug rehabilitation program. The court ordered that appellant could have monitored visits on a reasonable basis with Jasmine, with such visitation to include overnight visits on the weekends.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Her siblings include two full siblings and two half-siblings.

On May 2, 1994, a six-month review hearing was held, during which the court continued its order of suitable placement for Jasmine and family reunification.

On June 21, 1994, the DCS filed a section 387 petition, alleging that Jasmine and her siblings' placement with the paternal great uncle was no longer suitable as he was unable or unwilling to provide care. The court ordered that Jasmine and her siblings be detained from their placement with the great uncle based on the allegations of the petition. During the reunification period, the DCS reported that appellant had not visited with Jasmine in placement, and that Jasmine's parents were uninvolved in the reunification process. On August 1, 1994, the court sustained the section 387 petition.

Jasmine was moved into foster care, then subsequently moved to a preadoptive placement with Ms. Lee Tidwell on September 19, 1994. Ms. Tidwell has previously adopted two boys for whom she had provided foster care, and has an approved adoptive home study. The DCS found that Ms. Tidwell has shown outstanding care for the children placed in her care. On November 13, 1994, for the first time, appellant visited Jasmine in her placement with Ms. Tidwell.

On January 30, 1995, the court held the permanency planning hearing and found that Jasmine could not be returned to the care of her parents and that the DCS had made reasonable efforts to reunify Jasmine with her parents. The court also ordered the DCS to provide permanent placement services for Jasmine. The court ordered that the DCS had the discretion to re-place Jasmine and two of her siblings to a Ms. Leasa Fountain, in accordance with appellant's wishes. However, the DCS was unable to locate Ms. Fountain.

On August 8, 1995, Jasmine's older sister, Patricia, was replaced into the foster home with Ms. Tidwell and Jasmine. Ms. Tidwell indicated that she wanted to adopt Jasmine, and that she would commit to providing long-term care for Patricia.

On November 7, 1995, the court held a section 366.26 hearing, at which appellant urged that Jasmine, Patricia, and their brother Craig, be placed with Melody Washington, a second cousin to Jasmine. He opposed termination of his parental rights based on his desire to keep the children together under the care of Ms. Washington. The DCS urged that Ms. Washington was not an appropriate person to be considered for placement of Jasmine because Ms. Washington's oldest child was made a dependent of the court after she ingested rock cocaine while in the custody of her mother. That child is now brain-damaged and trainable mentally retarded. Furthermore, the child had

previously been treated for alcohol intoxication. Moreover, Ms. Washington has three children of her own, and it is unclear whether Ms. Washington is able to obtain a foster care license for her two-bedroom house. Additionally, Ms. Washington failed to follow social worker directions regarding visitations with Jasmine, which were ordered discontinued. Ms. Washington failed to keep later visitation appointments with Patricia. The court denied appellant's request for a contested hearing and terminated appellant's parental rights to Jasmine. The court found by clear and convincing evidence that Jasmine would be adopted, and directed the DCS to proceed to adoption placement.

This appeal follows.

## DISCUSSION

■ Section 395 provides that a judgment in a dependency proceeding "may be appealed from in the same manner as any final judgment." However, " '[a]n appellant cannot urge errors which affect only another party who does not appeal.' " (*In re Gary P.* (1995) 40 Cal.App.4th 875, 877 [46 Cal.Rptr.2d 929] review den., citing *In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261 [28 Cal.Rptr.2d 313].) That is, a parent is precluded from raising issues on appeal which did not affect his or her own rights. (*In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1835, 1836 [30 Cal.Rptr.2d 245]; *In re Gary P.*, *supra*, 40 Cal.App.4th at p. 877 review den.; *In re Nachelle S.* (1996) 41 Cal.App.4th 1557, 1562 [49 Cal.Rptr.2d 200] review den.)

*In re Daniel D.* concerned the appeal by a mother from the court's order terminating her parental rights pursuant to section 366.26, which raised the issue of the court's denial of the minor's maternal grandmother's request to be given de facto parent status. The court concluded that the mother lacked standing to raise that issue because her interests, which were to reunify with her dependent child, were not prejudiced by the denial of de facto status to the grandmother. (*In re Daniel D.*, *supra*, 24 Cal.App.4th 1823, 1835.) Moreover, the interest of a de facto parent is in his or her own relationship with the child, which may have developed over time, and not in advancing the natural parent's bond with the child. (*Id.*, at p. 1836.)

Similarly, in *In re Gary P.*, a mother appealed from an order terminating her parental rights on the grounds that adoption would sever ties with the maternal grandmother. The court found that the mother presented no argument that the judgment adversely affected her rights, and affirmed the judgment. (*In re Gary P.*, *supra*, 40 Cal.App.4th at p. 877.)

*In re Nachelle S.* dealt with a mother's attempt to modify a sibling visitation order after her parental rights had been terminated, on the basis

that " 'a parent has standing to raise issues of minors' best interests.' " (*In re Nachelle S.*, *supra*, 41 Cal.App.4th at p. 1560.) The court found that the mother was not aggrieved by the court's determination concerning the minors' visits with her siblings, and that a party cannot raise issues which do not injure them. (*Id.*, at p. 1562.)

On appeal, appellant urges that he is opposed to termination of his parental rights. He states that he was refused a contested hearing regarding the recommendation from DCS even though he provided an offer of proof to the court that Jasmine's best interests would be served in keeping her together with her sibling Patricia. Appellant's arguments on appeal focus on his due process rights and on section 366.26, which he contends provides a general exception to termination of parental rights when ". . . the court finds that adoption of the minor or termination of parental rights is not in the interests of the minor. . . ." (§ 366.26, subd. (c)(4).)

Although he urges that *In re Nachelle S.* and *In re Gary P.* are distinguishable because the parents did not seek reversal of the order terminating their parental rights, we find that distinction baseless. While appellant argues for the reversal of the order terminating his parental rights, his essential argument is that placement of Jasmine and Patricia with Ms. Washington would further Jasmine's best interests. Accordingly, we conclude that appellant has no standing to raise issues regarding the siblings' interest in each other, since his own rights have not been affected thereby.

Moreover, we agree with respondent DCS that under section 366.26, if a court finds the child adoptable, parental rights must be terminated absent the four exceptions enumerated in section 366.26, subdivision (c)(1)(A)-(D).[3]

---

[3]Section 366.26 (c)(1)(A-D) provides:

"(c) At the hearing the court shall proceed pursuant to one of the following procedures: [¶] (1) The court shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted based upon the assessment made pursuant to subdivision (i) of Section 366.21 or subdivision (b) of Section 366.22. If the court so determines, the findings pursuant to subdivision (b) or paragraph 1 of subdivision (e) of Section 361.5 that reunification services shall not be offered, or the findings pursuant to subdivision (e) of Section 366.21 that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the child for six months or that the parent has been convicted of a felony indicating parental unfitness, or pursuant to Section 366.21 or 366.22 that a minor cannot or should not be returned to his or her parent or guardian, shall then constitute a sufficient basis for termination of parental rights unless the court finds that termination would be detrimental to the minor due to one of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. [¶] (B) A minor 12 years of age or older objects to termination of parental rights. [¶] (C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and

Section 366.26, subdivision (c)(4)[4] cited by appellant for the proposition that when the parent establishes evidence that termination of parental rights is not in the best interests of the child, the court shall order a legal guardianship for the minor or long-term foster care, does not overcome his lack of standing. Further, appellant cites section 366.26, subdivision (c)(4) in arguing that a general "best interests" exception exists to the termination of parental rights so that legal guardianship or long-term foster care should be considered. ■ However, the section 366.26 hearing proceeds on the premise that the efforts to reunify are over, and the focus of the hearing is on the long-term plan for care and custody. (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1090 [10 Cal.Rptr.2d 813].) The court must proceed by section 366.26, subdivision (c)(1) and terminate parental rights if clear and convincing evidence shows that it is likely that the minor will be adopted. That is, ". . . it can be seen that there is no window of evidentiary opportunity for a parent to show that in some general way the 'interests' of the child will be fostered by an order based on some consideration not set forth in section 366.26." (8 Cal.App.4th at p. 1090.)

In any event, assuming that a "best interests" exception exists, the evidence that adoption is in Jasmine's best interests is overwhelming: Jasmine is thriving, her foster mother is extremely well qualified, and has agreed to long-term care of Patricia. The alternative, which appellant suggests, residence with Ms. Washington, is not compelling.

---

continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed. [¶] (D) The minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the minor."

[4]Section 366.26 (c)(4) provides:

"If the court finds that adoption of the minor or termination of parental rights is not in the interests of the minor, or that one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the minor or order that the minor remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the minor is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the minor shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the minor because the minor has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the minor."

## Disposition

The judgment is affirmed.

Boren, P. J., and Zebrowski, J., concurred.