Filed 7/24/13  In re L.C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>DANIEL H.,<br><br>        Defendant and Appellant. | G048052<br><br>(Super. Ct. No. DP022644)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Deborah Chuang Servino, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

Father appeals from the juvenile court's order, pursuant to a hearing under Welfare and Institutions Code section 366.26[1] (".26 hearing"), terminating his parental rights and deeming his daughter L.C. fit for adoption. Father raises two issues. First, he claims the court failed to investigate any Indian heritage he may have pursuant to the Indian Child Welfare Act (ICWA). Second, he claims his sister was entitled to preferential treatment for placement of the minor.

We affirm. With respect to the ICWA claim, we agree the court erred, but the error was harmless because father did not indicate either below or in his appellate briefs any possibility that he may have Indian heritage. With respect to his claim for preferential placement of L.C. with his sister, no such preferential treatment applies to the selection of adoptive parents pursuant to a .26 hearing. And to the extent father is attempting to raise errors from prior hearings that he did not appeal, they have been waived.

FACTS

L.C. was born in early June 2012, and both she and mother tested positive for opiates at L.C.'s birth. Mother admitted to longstanding drug abuse issues, had an extensive criminal history, and had lost custody of two other children in Texas. Mother had only recently moved to California from Texas. While another man was listed on L.C.'s birth certificate, mother identified father as the child's biological father. Mother indicated father was incarcerated in Texas, had a history of substance abuse, and had a history of violent behaviors including domestic violence and weapons charges.

On June 8, 2012, the court held a detention hearing and ordered L.C. detained in the temporary care and custody of the Orange County Social Services Agency

---

[1] All statutory references are to the Welfare and Institutions Code.

2

(SSA) pending a jurisdictional hearing. During that hearing the court noted mother and the man listed on the birth certificate as the father denied any Indian heritage.

Father told SSA he was currently incarcerated for 10 or more identity thefts, second degree burglary, and possession of a firearm. Father had requested parole, but was denied, and his projected release date was March 20, 2014. Father requested paternity testing, wanted to have an attorney appointed on his behalf, and wanted his sister evaluated for placement if he was found to be L.C.'s biological father. The paternity testing ultimately confirmed he is the biological father. Father was appointed counsel on July 12, 2012.

On July 26, 2012, the juvenile court sustained a jurisdictional petition detailing mother's extensive substance abuse issues and prior child protection matters, as well as father's own substance abuse issues, past legal troubles, and current incarceration.

On September 18, 2012, the court held a dispositional hearing and found it would be detrimental to the child to vest custody with the parents and instead vested custody with SSA. Father, whose counsel was present, did not request placement with his sister. The court denied reunification services to mother and father and set a .26 hearing. Father filed a notice of intent to challenge the orders entered at the dispositional hearing via a statutory writ petition, but his counsel subsequently withdrew that challenge.

The .26 hearing was held on January 24, 2013. The court terminated mother's and father's parental rights and deemed L.C. fit for adoption.

L.C.'s maternal aunt, who had adopted the child's half sibling through the Texas dependency system earlier in 2012, was interested in having L.C. placed with her and in adopting the child if mother proved unable to reunify. SSA's prospective adoptive placement assessment of L.C.'s maternal aunt revealed serious concerns, however, about the aunt's substance abuse history, exposure of her own adopted child to relatives who presented possible safety concerns, and the aunt's failure to disclose relevant information

in a timely manner.  Based on these concerns, in mid-January 2013, SSA decided not to consider the aunt's home for adoptive placement.

Father timely appealed from the findings and orders entered at the .26 hearing.

DISCUSSION

*The Court Erred in Failing to Investigate Whether Father Has Indian Heritage, but the Error Was Harmless*

Father first contends the court erred in failing to inquire whether father has Indian heritage.  SSA agrees the court erred, as do we.

The court and the SSA had an "affirmative and continuing duty to inquire" whether L.C. had any Indian affiliation.  (§ 224.3, subd. (a).)  The court inquired into whether mother or the individual listed as the father on L.C.'s birth certificate had Indian heritage, but after determining father was the biological parent, it did not inquire whether father has Indian heritage.

The error was harmless, however, because father made no indication either below or on appeal that he has Indian heritage.  "[W]here there is absolutely no suggestion by [father] that he in fact has any Indian heritage, he has failed to demonstrate the requisite prejudice."  (*In re N.E.* (2008) 160 Cal.App.4th 766, 769.)

As the court explained in *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431, "Father complains that he was not asked below whether the child had any Indian heritage.  Fair enough.  But, there can be no prejudice unless, *if* he had been asked, father *would have* indicated that the child did (or may) have such ancestry.  [¶]  Father is here, now, before this court.  There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation.  He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been

4

able to proffer some Indian connection sufficient to invoke the ICWA. He did not. [¶] In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way. [¶] The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal."

This result is particularly fair here because SSA, in its respondent's brief, specifically challenged father's inability to represent that he has Indian heritage. Rather than rise to the challenge in his reply brief, father deliberately chose not to address the issue. We infer father does not have Indian heritage. The court's error was harmless.

*The Court Did Not Err in Failing to Accord Father's Sister Preferential Consideration for Placement of L.C.*

Father next contends the court erred by failing to give preferential consideration to father's sister for L.C.'s placement. Father's argument is vague as he does not specify if the alleged error stems from placement decisions made at the dispositional hearing or the consideration of adoptive parents at the .26 hearing. Either way, his argument fails.

5

If he is claiming error at the dispositional hearing, he has waived the argument. "'An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed.'" (*In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1832, fn. 8.)  The dispositional hearing was held on September 18, 2012, and the dispositional order is an appealable judgment. (§ 395, subd. (a)(1); *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [Section 395 "makes the dispositional order in a dependency proceeding the appealable 'judgment'"].) Father had 60 days to appeal.  (Cal. Rules of Court, rule 8.406(a).)  While he began the statutory writ process (§ 366.26, subd. (l)), it was ultimately abandoned.  Thus, the orders at the dispositional hearing have become final.  (See *In re Daniel D.*, *supra*, 24 Cal.App.4th at pp. 1831-1832 [In appeal from .26 hearing, court's prior failure to give parental relative preferential consideration at dispositional hearing "'[had] long since become final and cannot be belatedly reviewed now'"].)  Further, although father had expressed a desire to have L.C. placed with his sister in a letter to SSA, he did not present his request to the court at the dispositional hearing or at any other time and, for that additional reason, waived it.  (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 ["A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court"].)

If father is claiming his sister was entitled to preferential consideration as an adoptive parent, he is wrong.  "The relative placement preference is set out in section 361.3.  It gives 'preferential consideration' to a request by a relative of a child who has been removed from parental custody for placement of that child.  '"Preferential consideration" means that the relative seeking placement shall be the first placement to be considered and investigated.'  (§ 361.3, subd. (c)(1).)  The preference applies at the dispositional hearing and thereafter 'whenever a new placement of the child must be made . . . .'  (§ 361.3, subd. (d).)  [¶]  . . . *There is no relative placement preference for adoption*."  (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 854-855, fn. omitted, italics

6

added; see also *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1031 ["It is well established that the relative placement preference found in section 361.3 does not apply after parental rights have been terminated and the child has been freed for adoption"].)[2]

DISPOSITION

The postjudgment order is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

ARONSON, J.

---

[2]　Father devotes a significant portion of his opening brief and all of his reply brief to his argument that it would violate his constitutional right to equal protection for the court to fail to pursue ICWA inquiry or relative placement for father due to his lack of presumed status. Since we agree the court should have inquired as to his potential Indian heritage and did not resolve the issue of relative placement based on his lack of presumed status, we need not address the issue.