Filed 5/9/17  Modified and certified for partial publication 6/5/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | C081545 |
| SACRAMENTO DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.L. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD234416) |

Appellants A.L. (mother) and S.K. (father), appeal from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  They contend the juvenile court erred in determining the beneficial relationship exception to adoption did not apply.  Father also contends the juvenile court

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

should have continued the hearing to consider placement of the minor with the paternal grandmother. We affirm the juvenile court's orders.

## FACTUAL AN PROCEDURAL BACKGROUND

On March 5, 2014, Sacramento Department of Health and Human Services (the Department) filed a section 300 petition, alleging that the one-year-old minor came within section 300, subdivision (a) in that the minor was at substantial risk of serious physical harm due to parents' history of domestic violence in the minor's presence, which resulted in physical confrontations, including an incident wherein the minor fell to the ground when father pushed her to get her out of the way and another incident wherein father punched the minor on her left thigh. The petition also alleged the minor came within section 300, subdivision (b) in that the minor was at substantial risk of serious physical harm because of the lack of adequate parental supervision or protection due to parents' history of domestic violence and to father's untreated anger management problem—which was exacerbated when he drank alcohol and which has contributed to his extensive history of violent crimes.

The social worker's report stated that father had a criminal record, including convictions for felony domestic violence in 2011 and 2012. A police report from January of 2014 reported that mother had stated that the parents got in an argument, father took away mother's phone, punched her in the back with a fist, and pushed and knocked over the baby. In February of 2014, mother went to the police department counter reporting threats by father and allegations that father had beaten her and the minor. Mother applied for a restraining order in February 2014, but changed her mind. Her affect was " 'matter-of-fact' " when she explained that obtaining the restraining order was " 'too stressful and expensive to travel back and forth to court' " and that she would prefer a family friend adopt her child.

During her subsequent interview with the social worker, mother denied any domestic violence, claiming she had made a false report. Father also denied any

2

domestic violence. The social worker interviewed a friend of mother who stated she had witnessed father hit the minor and that mother had reported father was abusive to the minor. The friend also stated that mother hit the minor when she was angry, cursed at the minor, and told the minor she wished she had died at birth.

On May 22, 2014, the juvenile court sustained the allegations in the Department's amended section 300 petition. Parents were ordered to participate in reunification services, including services for domestic violence, anger management, and parenting. Mother was also referred for a mental health assessment and father was ordered to participate in general counseling and substance abuse services.

Mother reported another incident of domestic violence with father in June 2014, after father punched her repeatedly in the face. She obtained a restraining order and left the home in September 2014. Thereafter, mother moved in with a new boyfriend and became pregnant with his child. In January 2015, mother called the police after father contacted her and her boyfriend, despite the restraining order in place.

The social worker discovered mother's boyfriend had 23 Child Protective Services (CPS) referrals for abuse/neglect and was facing criminal charges for sexual abuse, including vaginal penetration and forced oral copulation, of his daughter in New York. Nonetheless, mother was unable to clearly identify any "red flags," did not believe the allegations, and blamed the daughter's mother for causing trouble.

Both parents were participating in services and reunification services were continued at the six-month review hearing.

The social worker's 12-month permanency review report, dated April 23, 2015, recommended termination of reunification services. With regard to father, the social worker reported that while he had completed many of his reunification requirements, he "continues to minimize" his role in domestic violence, and he denies that domestic violence led to the minor's removal from the home. He also denies he violated the restraining order against him by contacting mother and her boyfriend in January 2015.

3

Father failed "to progress in the amount of time or frequency that he has seen [the minor] and has missed eight of his 25 visits." Father thereafter missed several more visits, testing dates, and appointments with the social worker. Father told the social worker that if the judge refuses to return the child to his custody, "then I just will tell the judge, send her to her mother's[.] I am done with this."

With regard to mother, the social worker reported that while mother had completed the majority of her case plan, she did not follow through with individual counseling and was adamant that she will not do so because she does not see the need for it. She was not independent and had moved in with her boyfriend, whose female baby she was carrying, despite safety concerns surrounding the boyfriend's numerous CPS referrals and that he was awaiting trial on charges that he molested his daughter. Mother's visits with the minor remained supervised and she had been redirected many times about bribing the minor or using hurt and pain to gain the minor's attention.

The juvenile court terminated reunification services and set a section 366.26 hearing. The social worker's section 366.26 hearing report recommended termination of parental rights.

The minor was in good health and developmentally on target. She had been placed with her current foster parents since March 2014 and they were interested in adopting her. She had developed a close and affectionate relationship with her foster parents and they had fully integrated her into the family. Father objected to the termination of parental rights, requested return of the minor or, alternatively, placement of the minor with the paternal grandmother.

At the section 366.26 hearing, both parents testified regarding the nature of their visits and relationships with the minor. Both parents argued that they had established the requisite requirements to prove the beneficial parental relationship exception to adoption. The juvenile court found the minor was likely to be adopted, that termination of parental rights would not be detrimental to the minor, and that no exception to adoption applied.

The juvenile court then terminated parental rights and selected a permanent plan of adoption.

## DISCUSSION

**1.0     Beneficial Relationship Exception to Adoption**

Both mother and father contend the juvenile court erred by failing to find the beneficial relationship exception to adoption applied.  We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . .  *The permanent plan preferred by the Legislature is adoption.* [Citation.]'  [Citation.]  If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child."  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)

There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B).)  One such circumstance is when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child.  (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.)  And even if there is such a bond, the parent must prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' "  (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; accord, *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1345.)  "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural

5

parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) On the other hand, "[w]hen the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350; *In re Autumn H.*, at p. 575.) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.*, at p. 1350.)

In April 2015, the social worker reported that father had missed eight out of 25 visits. Thereafter, he missed four more visits between July 27, 2015 and September 30, 2015. Additionally, father's visits were limited to weekly one-hour supervised visits and he never requested unsupervised visits. Likewise, mother missed nine visits between July 1, 2015 and September 30, 2015 (when she was pregnant with her boyfriend's child) and also never progressed beyond supervised visits. Thus, although the juvenile court did not rely on parents' inconsistent visitation, parents' visitation was not consistent.

Moreover, even if parents' missed visits were not considered, neither parent established that they had such a positive emotional bond with the minor that maintenance of such in a tenuous placement was so beneficial as to outweigh the benefits the minor would gain by being placed in a permanent home.

Until February 2015, mother was satisfied visiting the minor once a week and declined to have her visits increased, either in duration or frequency. Her visits were increased to twice a week in February 2015, but mother often did not stay for the full 90 minutes. Mother struggled with interacting with the minor and coming up with activities

6

and would use candy as a bribing tool in order to receive affection from the minor. Thereafter, in August 2015, mother requested her visits be reduced to once a week.

By January 2016, mother's visits had improved. Mother was attentive to the minor and connected to her through dance, singing, and reading. The minor was beginning to stay engaged in the play, rather than becoming easily bored. The minor initiated and reciprocated affection and appeared happy prior, during, and after visits. Mother testified the minor would also inquire when she would be going home with her.

Likewise, father's visits with the minor were generally appropriate and went well. Father was able to interact with the minor for the full one-hour duration of his weekly visits and the minor appeared happy to greet him. Father also testified she would sometimes ask if visits could last longer. The minor also, however, transitioned to the foster parents "very well" at the end of visits. Additionally, father resisted bringing any food other than McDonald's fast food for the minor at visits, insisting that "she only eats chicken nuggets and French fries" and that McDonald's food did not have any fat in it. In January 2016, it was reported that father had recently begun to bring homemade food for the minor. Father did not want his visits increased and indicated if the minor was not returned to parental custody, he "was done with this."

But while parents established that the minor referred to them as "mommy" and "daddy,"[2] and that visits generally went well, they did not meet their burden to establish that the minor's bond with them was so substantial and positive that the minor would be greatly harmed by its termination, or that maintaining the bond would promote the well-being of the minor to such a degree that it would outweigh that which the minor would gain in a permanent home. (See *In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) "[P]leasant and cordial . . . visits are, by themselves, insufficient to mandate a permanent

---

[2] The minor also referred to her foster parents as "mommy" and "daddy."

7

plan other than adoption." (*In re Brian R.* (1991) 2 Cal.App.4th 904, 924.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant, positive, emotional attachment between parent and child. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555; *In re Autumn H.*, at p. 575; *In re Beatrice M.*, *supra*, 29 Cal.App.4th at p. 1418.)

Here, the minor was removed from parental custody when she was a year old. Although the minor showed some distress, such as crying and tantrums, when initially removed from parental custody, after approximately six months, she appeared to be a happy child and the frequency of her tantrums declined to that of an average child her age. Even observers' reports that minor was sad at the end of father's visits ceased.[3] By the time of the section 366.26 hearing, she had been living with her foster parents nearly two-thirds of her young life, had developed a strong and loving bond with them, and looked to them to meet her emotional and physical needs. Thus, it appeared she had been able to develop a positive attachment to caretakers other than parents and was adjusting well to placement out of parents' care.

In sum, the record supports the juvenile court's finding that the minor's relationship with mother and/or father did not rise to the type of substantial, positive, and emotional attachment that would cause the minor great harm if severed and did not outweigh the benefits of a stable and permanent home.

## 2.0 Relative Placement Preference

"Section 361.3 gives 'preferential consideration' to a relative's request for placement, which means 'that the relative seeking placement shall be the first placement to be considered and investigated.' (§ 361.3, subd. (c)(1).)" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033 (*Cesar V.*).) "When considering whether to place the

---

[3] Father claimed the minor got "emotional" at the end of visits and she would get a sad facial expression.

child with a relative, the juvenile court must apply the [section 361.3] placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement." (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719.)

The relative placement provisions in section 361.3 apply when a child is taken from her parents and placed outside the home pending the determination whether reunification is possible. (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285.) The relative placement preference also applies to placements made after the dispositional hearing, even when reunification efforts are no longer ongoing, whenever a child must be moved. (§ 361.3, subd. (d); see *Cesar V.*, *supra*, 91 Cal.App.4th at pp. 1031-1032.) However, the relative placement preference does not apply to an adoptive placement; there is no relative placement preference for adoption. (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855; see *In re K.L.* (2016) 248 Cal.App.4th 52, 65-66.) Instead, at the section 366.26 hearing, the court must apply the caretaker preference under section 366.26, subdivision (k).

Here, father contends the juvenile court's order terminating parental rights must be reversed because the Department and juvenile court failed to assess the paternal grandmother's request for placement under the requirements of section 361.3. We conclude father lacks standing to raise this contention and, in any event, forfeited it by failing to raise it in the juvenile court.

### 2.1 *Father's Standing*

Whether a person has standing to raise a particular issue on appeal depends upon whether the person's rights were injuriously affected by the judgment or order appealed from. (*Cesar V.*, *supra*, 91 Cal.App.4th at pp. 1034-1035.) A person does not have standing to urge errors on appeal that affect only the interests of others. (*In re Gary P.* (1995) 40 Cal.App.4th 875, 877.) Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights. (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806.)

9

The section 361.3 relative placement preference requires "preferential consideration" be given to a relative's request for placement of a dependent child. (§ 361.3, subd. (a).) This section protects a relative's "separate interest" in a relationship with the child. (*Cesar V.*, *supra*, 91 Cal.App.4th at pp. 1034-1035.) In contrast, a parent's interest in a dependency proceeding is in *reunifying* with the child. (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261; § 361.5.) The parental interest in reunification is distinguished from a relative's "separate interest" in preferential placement consideration or in having a relationship with the child. (*Cesar V.*, at pp. 1034-1035.)

In view of this distinction, the court in *Cesar V.* held that a parent does not have standing to raise relative placement issues on appeal, where the parent's reunification services have been terminated. (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1035.) This is because decisions concerning placement of the child do not affect the parent's interest in reunification, where the parent is no longer able to reunify with the child. (See *id.* at pp. 1034-1035.) In contrast, where the parent's reunification services have not been terminated, placement of the child with a relative arguably affects the parent's chances of reunifying with the child. Thus, where reunification remains a possibility, the parent has standing to raise relative placement issues on appeal. (*Id.* at p. 1035, citing *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1833-1834.)

Here, father's reunification services had been terminated. Father cannot establish that his rights and interest in reunification are injuriously affected by any failure to consider the paternal grandmother for placement at the section 366.26 hearing, from which he has filed his appeal.

Nevertheless, father argues that placement with the paternal grandmother could have triggered the relative caregiver exception to adoption under section 366.26, subdivision (c)(1)(A), which provides that the court need not terminate parental rights when "[t]he child is living with a relative who is unable or unwilling to adopt the child

10

because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment through legal guardianship, and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child. . . .'"  (See *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053-1054; *In re H.G.* (2006) 146 Cal.App.4th 1, 9-10.)  Accordingly, he reasons he has standing because if the juvenile court had ordered placement with the paternal grandmother, it would have advanced his argument that parental rights should not be terminated under this exception.  We disagree.

Even if the juvenile court had decided placement of the minor with the paternal grandmother was appropriate, it would have then immediately proceeded to the permanency determinations of the section 366.26 hearing.  That placement would not have advanced father's argument that the relative caretaker exception under section 366.26, subdivision (c)(1)(A) applied because (1) there was no indication the paternal grandmother was willing to adopt the minor, and (2) the minor would not have been living with her paternal grandmother for any length of time so she would not have developed a relationship with the paternal grandmother that would have made removal detrimental to the minor's emotional well-being.

Accordingly, father is not an aggrieved party and lacks standing to assert error—in the failure to place the minor with the paternal grandmother or otherwise raise the relative placement—under the section 361.3 issue on appeal.

### 2.2    *Forfeiture*

Even if father had standing to raise the relative placement preference, he forfeited his contentions that the Department and juvenile court failed to assess the paternal grandmother's request for placement under the requirements of section 361.3 by failing to pursue the matter in the juvenile court.

11

Father argues that reversal is required because it does not appear in the record that the social worker conducted a proper search for potential relative placements within 30 days from when the minor was removed from parental custody, as required by section 361.3, subdivision (a)(8) and section 309, subdivision (e). He also argues that reversal is required because the social worker did not do enough to assist the paternal grandmother when she came forward in December 2014, just after the six-month review hearing, and stated she was interested in placement. These contentions are forfeited.

"Dependency appeals are governed by section 395, which provides in relevant part: 'A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment.' " (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149.) Section 395 makes the dispositional order the appealable "judgment." Therefore, all subsequent orders are directly appealable, except for orders setting a section 366.26 hearing, challenged by a timely writ petition, which was summarily denied or not decided on the merits. (*In re Meranda P.*, at p. 1150; § 366.26, subd. (*l*).) If father believed the social worker had not complied with statutory requirements in pursuing the paternal grandmother as a relative placement, he could have raised the issue in the juvenile court and, thereafter, on appeals from the disposition order, the 12-month review order, or other appealable orders. He did not do so. He therefore forfeited his objection.

Even if father could still challenge the adequacy of the social worker's pursuit of placement with the paternal grandmother at the time of the section 366.26 hearing, father still forfeited his claim by failing to raise his relative placement preference objection at the hearing. Although father identified the "[d]etermination of whether the Department has taken sufficient measures to investigate Paternal Grandmother's ability to take custody of the minor child" as a "factual issue" in his pretrial brief, he did not present evidence on this issue, request factual findings, or request any ruling regarding whether the paternal grandmother was properly investigated for placement or entitled, at any

12

point, to relative placement preference. By failing to litigate this issue or request a ruling from the juvenile court, father failed to preserve the issue on appeal. (*People v. Ramirez* (2006) 39 Cal.4th 398, 472-473; *In re Casey D.* (1999) 70 Cal.App.4th 38, 54 [appellate court in a dependency proceeding normally may not consider an objection raised for the first time on appeal].)

Relying in part on *Cesar V.*, father argues the juvenile court should have held a hearing under section 361.3 to evaluate the paternal grandmother for placement because the Department had not fulfilled its duties to do so. He further argues that the juvenile court had a duty to hold this hearing sua sponte, again relying on *Cesar V. Cesar V.* is inapposite in nearly every way.

In *Cesar V.*, the children's foster family was not interested in adoption, necessitating a change of placement as the case approached the section 366.26 hearing, and the parties stipulated to the evaluation of a specific relative. (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1027.) The social worker's subsequent section 366.26 report stated that the subject relative was found not to be a suitable placement. (*Cesar V.*, at pp. 1027-1028.) At the section 366.26 hearing, father's counsel challenged the denial of placement with the relative and, after discussions, the parties stipulated to proceed in a bifurcated fashion and resolve the challenge to placement prior to the permanency issues. (*Cesar V.*, at p. 1028.) The juvenile court then heard five days of testimony and argument on the issue. (*Ibid*.) The juvenile court thereafter found the agency "acted upon its order" to assess the relative for placement and found the agency had not "abuse[d] its discretion" in deciding not to place the minor with the relative. (*Id*. at p. 1030.)

The appellate court in *Cesar V.* first held that the relative placement preference applied, even after termination of reunification services, because a new placement became necessary. (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1033.) Thus, the juvenile court still had the power and duty to make an independent placement decision under

13

section 361.3, rather than reviewing the agency's decision for abuse of discretion. (*Cesar V.*, at p. 1033.)

Here, the minor's foster parents *were* interested in adoption so there was no need to make a change in placement, which would have triggered the post-reunification preferential consideration of relative placement. Moreover, father did not challenge the failure to place the minor with the paternal grandmother, present evidence and argument, or request a ruling on the matter. Nor did father or the paternal grandmother request a hearing regarding placement with the paternal grandmother. Thus, the occasion to hold a section 361.3 hearing was not presented to the juvenile court. And while *Cesar V.* found that the juvenile court, under the circumstances presented, was to independently assess the facts relative to placement, rather than deferring the agency's decision, it never found the juvenile court has a general duty to hold a relative placement hearing sua sponte.

Accordingly, we conclude father forfeited any contentions he had regarding the adequacy of the Department's assessment, or the juvenile court's consideration, of the paternal grandmother for placement under the requirements of section 361.3.

### DISPOSITION

The orders of the juvenile court are affirmed.

/s/
Butz, J.

We concur:

/s/
Raye, P. J.

/s/
Hoch, J.

14

## CERTIFIED <u>FOR</u> <u>PARTIAL</u> <u>PUBLISHED</u>*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

**----**

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | C081545 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD234416) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| v. | |
| A.L. et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Sacramento County, Natalie S. Lindsey, Referee.  Affirmed as modified.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant A.L.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant S.K.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 1.0 of the Discussion.

1

Robyn Truitt Drivon, County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

THE COURT:

The opinion in the above entitled matter filed on May 9, 2017, was not certified for partial publication in the Official Reports. For good cause it now appears that the opinion should be partially published in the Official Reports with the exception of part 1.0 of the Discussion, and it is so ordered.

The opinion shall be modified in the following particulars:

1.     On page 2 of the slip opinion, delete the word "AN" in the heading and replace it with "AND" so the heading now reads, "FACTUAL AND PROCEDURAL BACKGROUND".

2.     On page 11, in part 2.1 of the slip opinion, in the first full paragraph, which begins "Even if the juvenile court", replace the word "willing" in clause "(1)" of the second sentence with "unwilling" so that clause (1) now reads:

> (1) there was no indication the paternal grandmother was unwilling to adopt the minor, and

There is no change in judgment. (***CERTIFIED FOR PARTIAL PUBLICATION.***)

FOR THE COURT:

          RAYE          , P. J.

          BUTZ          , J.

          HOCH          , J.

2